NO. 24-6461

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KEITH ANDRE GREEN

Defendant - Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION
HONORABLE DONALD W. MOLLOY
UNITED STATES DISTRICT COURT JUDGE, PRESIDING
CR. No. 24-00008-DWM

---

**OPENING BRIEF OF APPELLANT**

---

Jason T. Holden
Faure Holden Henkel Terrazas, P.C.
1314 Central Avenue
P.O. Box 2466
Great Falls, MT 59403-2466
jason@fhht.law
Telephone: 406.452.6500
Facsimile: 406.452.6503
*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii-v

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    Subject Matter Jurisdiction of the District Court . . . . . . . . . . . . . . 2
       B.    Jurisdiction of the Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . 2
       C.    Appealability of District Court Order and Timeliness
            of the Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   CONSTITUTIONAL AND STATUTORY AUTHORITIES . . . . . . . . . . . 3

IV.   STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      Whether the District Court erred in denying Green's Motion
      to Suppress when it decided that Trooper Larson's hunch that
      Green was driving a blue Chrysler 300 provided particularized
      reasonable suspicion to stop the vehicle . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.     STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       B.    Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       C.    Disposition in the District Court . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
       D.    Statement of Bail Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI.   STATEMENT OF THE PERTINENT FACTS . . . . . . . . . . . . . . . . . . . . . 4

       A.    Green is Suspected of Dealing Drugs . . . . . . . . . . . . . . . . . . . . . . . . 4
       B.    A Blue Chrysler 300's License Plate is Hit Traveling
            Eastbound on I-90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
       C.    Trooper Larson Pulls Beside and Behind a Blue Chrysler 300 . . . . . 5

D. Trooper Larson Believed Green was Driving the Blue Chrysler 300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

E. Green Directly Challenges the Credibility of Trooper Larson . . . . . . 9

F. As a Result of Trooper Larson's Stop, a Search of the Blue Chrysler 300 Revealed Fetanyl and Methamphetamine . . . . . . . . . 10

G. The Search of Green's Vehicle was Used as a Basis for Other Warrants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

H. Green is Convicted at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VII. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A. Trooper Larson's Hunch That Green Was Driving the Blue Chrysler 300 Did Not Provide Particularized Suspicion to Conduct an Investigatory Stop of the Vehicle . . . . . . . . . . . . . . . 12

  1. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  2. Reviewability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  3. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IX. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

*Alabama v. White*,
     496 U.S. 325 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Conrad v. United States,*
     447 F.3d 760 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Heien v. North Carolina*,
     574 U.S. 54(2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hiibel v. Sixth Judicial Dist. Court of Nevada*,
     542 U.S. 177, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004) . . . . . . . . . . . . . 16

*Illinois v. Wardlow*,
     528 U.S. 119,(2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*INS v. Delgado*,
     466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984). . . . . . . . . . . . . . 15

*Mapp v. Ohio*,
     367 U.S. 643 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Minnesota v. Dickerson*,
     508 U.S. 366 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Papachristou v. City of Jacksonville*,
     405 U.S. 156 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Terry v. Ohio,*
     392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . 1, 11-12, 14-17, 20, 22-24

*United States v. Arvizu*,
     534 U.S. 266(2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*United States v. Brown*,
     996 F.3d 998 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15, 22

*United States v. Cervantes,*
    678 F.3d 798 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Charley,*
    396 F.3d 1074(9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*United States v. Cortez,*
    449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). . . . . . . . . . . . . 15, 22

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Job*,
    871 F.3d 852 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Martinez-Fuerte*,
    428 U.S. 543, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976). . . . . . . . . . . . . . 15

*United States v. Montero-Camargo*,
    208 F.3d 1122 (9th Cir. 2000) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Nault*,
    41 F.4th 1073 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*United States v. Nelson*,
    137 F.3d 1094 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ramirez*,
    473 F.3d 1026 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*United States v. Rodriguez*,
    976 F.2d 592 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Sharpe*,
    470 U.S. 675(1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Vasquez,*
 858 F.2d 1387 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Wallace,*
 213 F.3d 1216 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Williams*,
 846 F.3d 303(9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Yang,*
 958 F.3d 851 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Wong Sun v. United States*,
 371 U.S. 471(1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Federal Rules of Appellate Procedure:
 Rule 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules of Criminal Procedure:
 Rule 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

United States Constitution:
 Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14
 Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 Article III, Section 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States Code:
 18 U.S.C. § 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Other Authority:

The Collapse of American Criminal Justice (2011),
 William J. Stuntz, pg. 369, n. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I.    INTRODUCTION

A hunch, even if it is a correct one, is not particularized suspicion. A valid *Terry* stop must be "justified at its inception," and requires law enforcement to first identify the "*particular person*" suspected of criminal behavior *before* initiating the "investigatory stop." The purpose of the "investigatory stop" cannot be to identify the person. But that is what happened here. *Before* he stopped a blue Chrysler 300, Montana Highway Patrol Trooper Steven Larson (Trooper Larson) did not, one hundred percent (100%), identify Keith Andre Green (Green) as the driver. Based on a "suspicion," Trooper Larson thought it was "gonna be" Green, and although he *believed* the driver matched Green's physical characteristics, Green's actual identity as the driver was only confirmed *after* he pulled him from the vehicle. Trooper Larson claimed he identified Green's physical characteristics through a "heavily tinted" window. His credibility was undermined when he also claimed that he identified Green by his hair when in fact Green was wearing a stocking cap--a wave cap. There would have been no way to identify Green by his hair. On this record, Trooper Larson lacked credibility when he claimed he identified Green's "physical characteristics" *before* he stopped the vehicle. Ultimately, it does not matter that Trooper Larson's hunch was correct. The search of Green's vehicle, and all of the evidence obtained as a result of that search, should be suppressed as fruit of the poisonous tree.

1

## II.    STATEMENT OF JURISDICTION

### A.    Subject Matter Jurisdiction of the District Court.

Green was charged in a three (3) Count Indictment on January 24, 2024, with Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846 (Count I); Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841A (Count II); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924A (Count III).

The United States District Court for the District of Montana, Missoula Division, had jurisdiction over the original criminal action pursuant to Article III, Section 2, Clause 1, of the United States Constitution and 18 U.S.C. § 3231.

### B.    Jurisdiction of the Court of Appeals.

This is a direct appeal from a final decision of a United States District Court entering its judgment of a criminal conviction and sentence. This Court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291 and Rule 32 of the Federal Rules of Criminal Procedure.

### C.    Appealability of District Court Order and Timeliness of the Appeal.

The District Court entered its Judgment on October 22, 2024. DKT 147; ER 3. Green filed a Notice of Appeal on October 22, 2024. DKT 149; ER 194. His appeal is timely under Rule 4(b) of the Federal Rules of Appellate Procedure.

## III.  CONSTITUTIONAL AND STATUTORY AUTHORITIES

The Fourth Amendment to the United States Constitution: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourteenth Amendment to the United States Constitution: Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## IV.  STATEMENT OF ISSUES

**Whether the District Court erred in denying Green's Motion to Suppress when it decided that Trooper Larson's hunch that Green was driving a blue Chrysler 300 provided particularized suspicion to stop the vehicle.**

## V.  STATEMENT OF THE CASE

### A.  Nature of the Case.

This is an appeal from a judgment imposing a one-hundred eighty (180) month sentence and five (5) years (with special conditions) of supervised release imposed by the United States District Court for the District of Montana, Missoula Division, following a jury trial.

### B.  Course of Proceedings.

Green was charged in a three (3) Count Indictment on January 24, 2024. A

3

two-day jury trial was held on June 24 and 25, 2024. He was found guilty on all three (3) Counts. On October 24, 2024, Green appeared before United States District Judge Donald W. Molloy for Sentencing. He appealed on October 24, 2024.

**C.      Disposition in the District Court.**

Green was sentenced to a total term of one-hundred eighty (180) months, comprised of 120 months as to count 1 and 60 months as to count 2, to run concurrently, and 60 months as to count 3 to run consecutively. Green was sentenced to five (5) years of supervised release upon his release from imprisonment.

**D.      Statement of Bail Status.**

Green is presently serving his sentence in the custody of the BOP with a projected release date of August 14, 2036. His address is set forth in the Certificate of Service.

**VI.    STATEMENT OF THE PERTINENT FACTS**

**A.      Green is Suspected of Dealing Drugs.**

Agent Brandon O'Dell (Agent O'Dell) of the Missoula Drug Task Force first began investigating Green in mid-2022. Supp. Tr. Pg. 6 L.9-10, ER 28. On January 17, 2023, Agent O'Dell conducted surveillance of Green at a Missoula, Montana AutoZone in a blue Chrysler 300. Supp. Tr. Pg. 6 L.11-25; Pg. 7 L. 2,

ER 28. Agent O'Dell had observed Green driving the same vehicle one time prior to January 17, 2023. *Id.* at L.15. Agent O'Dell did not witness any drug distribution on January 17, 2023, but he believed he observed Green engage in behavior at the AutoZone that was consistent with that of drug distribution activity. Supp. Tr. Pg. 8 L. 3-5, ER 28. Agent O'Dell knew the blue Chrysler 300 was not registered to Green. Supp. Tr. Pg. 7, L. 3-4. ER. 28.

Prior to the January 17, 2023, surveillance Agent O'Dell had received information from eight (8) to nine (9) individuals that Green was acquiring and distributing drugs. Supp. Tr. Pg. 12 L. 8-13, ER 28.

At some point, Agent O'Dell conveyed what he knew about Green over the phone to Trooper Larson. Supp. Tr. Pg. 13 L. 7-8, ER 28.

**B.      A Blue Chrysler 300's License Plate is Hit Traveling Eastbound on I-90.**

On February 7, 2023, Agent O'Dell spoke with Trooper Larson and told him that a license plate reader picked up that the license plate for the blue Chrysler 300 was traveling eastbound on I-90. Supp. Tr. Pg. 13 L.20-21, ER 28. He also told Trooper Larson that he believed Green was driving the vehicle and to conduct an interdiction stop. Supp. Tr. Pg. 13 L. 25, ER 28. Agent O'Dell did not know if Green was driving the vehicle on February 7, 2023. *Id.*

**C.      Trooper Larson Pulls Beside and Behind a Blue Chrysler 300.**

Agent O'Dell told Trooper Larson to develop his own particularized

suspicion. Supp. Tr. Pg. 26 L. 15-22; Pg. 27 L.22-25, ER 28. Although he was told that Agent O'Dell suspected Green was driving the vehicle, it was not confirmed that Green was the driver. Supp. Tr. Pg. 30, L. 23-25, ER 28. Trooper Larson learned on his own that Green had an expired license and an active arrest warrant. Supp. Tr. Pg. 28 L. 21-22, ER 28.

Trooper Larson located the blue Chrysler 300 near the 50,000 Silver Dollar Bar by St. Regis, Montana traveling east on I-90. Supp. Tr. Pg. 28 L. 9-16, ER 28. He followed it for a short time and then he drove up to the side of the vehicle to try and confirm the identity of the driver and looked in the heavily tinted driver's side window. Supp. Tr. Pg. 28 L. 23-25, ER 28.

Trooper Larson did not observe any moving or traffic violations. Supp. Tr. Pg. 36 L. 10-12, ER 28. He did not see any evidence of criminal activity. Supp. Tr. Pg. 37 L. 9-12, ER 28.

By driving beside the vehicle, Trooper Larson claimed he was to see through the heavily tinted driver's side window to confirm Green's physical characteristics from the picture he had on his computer. Trooper Larson claims the driver of the vehicle and the person in the photo matched. Supp. Tr. Pg. 29 L. 1-2, ER 28. He then pulled back to the rear of the vehicle and conducted a traffic stop. *Id.* at L.2-3.

### D. Trooper Larson Believed Green was Driving the Blue Chrysler 300.

The windows on the blue Chrysler 300 were heavily tinted. Supp. Tr. Pg. 29 L. 6, ER 28. The picture below is a screenshot of the traffic stop and is a real world image of the "heavily tinted" window through which Trooper Larson claimed he could identify the "physical characteristics" of Green as the driver before stopping the vehicle:



Ex. 1 to Green's Brief in Support of Motion to Dismiss, ER .

Trooper Larson testified that he saw an outline of the individual driving the vehicle and could see the physical characteristics that he claimed basically matched the picture he had on his computer of Green, that is, the outline of the driver matched the photo of Green. Supp. Tr. Pg. 29 L. 12-15; Pg. 45 L. 1-5, ER 28.

Significantly, Trooper Larson said that Green had a pretty unique hairstyle

7

and he could see, "more likely than not," that a male was driving the car through the rear window. Supp. Tr. Pg. 44 L. 22-24, ER 28.

Regarding his hunch that the driver of the blue Chrysler 300 was Green, Trooper Larson conceded that he was not able to identify Green as the driver until he approached the vehicle and the driver rolled down the window a little bit. Supp. Tr. Pg. 31 L. 3-6, ER 28. Trooper Larson also conceded that he was only able to one hundred percent (100%) positively identify Green as the driver only *after* the traffic stop. Supp. Tr. Pg. 40 L. 18-19, ER 28.

Trooper Larson agreed that it was possible that someone else was driving the blue Chrysler 300, but he believed that based off of the "suspicion" at the time he felt pretty confident that it was "gonna be" Green. Supp. Tr. Pg. 43 L. 24-25; Pg. 44 L. 1-3, ER 28.

On the video footage Trooper Larson said to Green that "I just can't see anything" as it relates to the heavily tinted windows. Supp. Tr. Pg. 39 L. 13-14; 23-24, ER 28. This is despite Trooper Larson's claim that he could identify the physical characteristics of Green through the window by matching a picture on his computer.

Although the windows were "heavily tinted" that was not the reason Trooper Larson stopped the vehicle and he did not test the window tint to see if it violated any Montana law. Supp. Tr. Pg. 37 13-18, ER 28.

8

### E. Green Directly Challenges the Credibility of Trooper Larson.

Green directly challenged the credibility of Trooper Larson. Trooper Larson testified that because Green had a pretty unique hairstyle and he could see it through the rear window, "more likely than not," a male was driving the car. Supp. Tr. Pg. 44 L. 22-24, ER 28. Green explained that his hair was not even visible while he was driving because he was wearing a stocking cap--a wave cap. Supp. Tr. Pg. 46 L. 17-25; Pg. 47 L. 1-4, ER 28. Green explained that because he was wearing a stocking cap--a wave cap, there was no way Trooper Larson could see his hair by looking through the rear window. Supp. Tr. Pg. 47 L. 6-8, ER 28. Green's attack on Trooper Larson's credibility is supported by the following image, which also shows how difficult it is to identify anything through the driver's side window which can be seen behind Trooper Larson partially rolled down:



Government's Exhibit 5 on Hearing Regarding Green's Motion to Suppress.

Green also challenged Trooper Larson's credibility by explaining that there was no way for him to see through the driver's side window and identify him as the driver. Green explained that the tint was the darkest tint you can have by law, and you cannot see through it. Supp. Tr. Pg. 47 L. 9-17, ER 28.

### F. As a Result of Trooper Larson's Stop, a Search of the Blue Chrysler 300 Revealed Fentanyl and Methamphetamine.

While Trooper Larson was speaking with Green, an officer with the City of Missoula Police Department conducted a dog sniff of the vehicle. The dog alerted on the vehicle. A Search Warrant was then obtained for the blue Chrysler 300 and approximately 3,958 suspected fentanyl pills, approximately 1,362.2 grams of methamphetamine, approximately 6.28 grams of an unknown powder, tin foil with residue and two prescription pills--were recovered. ER 107.

### G. The Search of Green's Vehicle was Used as a Basis for Other Warrants.

The search of Green's vehicle was used as the basis to obtain Search Warrants for Green's home (two warrants for his home), his iPhone, and his Ram Truck. ER 112-13; Ex. 1-5 of United States' Response to Defendant's Motion to Suppress.

### H. Green is Convicted at Trial.

At trial, a number of witnesses testified that Green distributed drugs and

possessed a gun in the furtherance of his drug crimes. ER 10. The jury convicted

Green.

## VII.  SUMMARY OF ARGUMENT

Trooper Larson's hunch that Green was driving the blue Chrysler 300 is not, and cannot be, particularized suspicion. A *Terry* stop must be "justified at its inception." Trooper Larson did not, one hundred percent (100%), identify Green as the driver until *after* he pulled him from the vehicle. Purporting to see an outline of a person and having a hunch as to who the driver *might* be or stopping a vehicle on a "suspicion" that it is "gonna be" the person of interest does not satisfy the Constitutional requirement that *before* a *Terry* stop *begins,* law enforcement must have a particularized and objective basis for suspecting a "*particular person*" of criminal activity. That burden is not satisfied on this record where Trooper Larson admits he failed to positively identify Green *before* he stopped him. A stop based on a "suspicion" and a "gonna be" hunch, is still a hunch. And a hunch is not enough, not even if the hunch is ultimately proven correct.

On this record Trooper Larson's credibility is in doubt. He claimed that he identified Green in part because of his hair. Green testified that he was wearing a stocking cap--a wave cap, and there was no way Trooper Larson could identify him by his hair--let alone identifying his outline through a "heavily tinted" driver's side window. The audio from the video shows that Trooper Larson could not see

11

anything through the window-he says it himself. And Green used Government's Exhibit 5 to support his attack on Trooper Larson's credibility. Green's attack on Trooper's Larson's credibility regarding his identification of him by his hair, undermines the claim that he could see through the "heavily tinted" driver's side window to see an outline of a driver that matched the physical characteristics of an image of Green on his computer screen.

As a result of Trooper Larson's unconstitutional investigatory stop, the search of the vehicle violated the Fourth Amendment and all evidence that was obtained against Green in this entire case should be suppressed as fruit of the poisonous tree.

## VIII. ARGUMENT

### A. Trooper Larson's Hunch That Green Was Driving the Blue Chrysler 300 Did Not Provide Particularized Suspicion to Conduct an Investigatory Stop of the Vehicle.

#### 1. Standard of Review.

A District Court's denial of a motion to suppress is reviewed *de novo*. *United States v. Yang*, 958 F.3d 851, 857 (9th Cir. 2020).

The propriety of a *Terry* stop is reviewed *de novo*. *United States v. Job*, 871 F.3d 852, 861 (9th Cir. 2017).

The determination whether an investigatory stop is a warrantless arrest or a *Terry* stop is a mixed question of law and fact, reviewed *de novo*. *United States v.*

*Charley*, 396 F.3d 1074, 1079 (9th Cir. 1991).

A District Court's conclusions of law underlying the denial of a motion to suppress evidence are also reviewed *de novo*. *United States v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008).

A District Court's factual findings are reviewed for clear error. *Yang*, 958F.3d at 857.

A District Court's credibility determinations are reviewed for clear error. *United States v. Vasquez*, 858 F.2d 1387, 1391 (9th Cir. 1988). Although "special deference" may be given to a District Court's credibility determinations (*United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998)), when those finding are "internally inconsistent" clear error exists. *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006).

## 2.  Reviewability

Green filed a Motion to Suppress. DKT. 54; ER 188. A hearing on Green's Motion to Suppress was held on May 20, 2024. ER 28. The District Court denied Green's Motion on May 21, 2024. DKT 60, ER 18. Green went to trial on June 24 and June 25, 2024. ER 10. He has not waived his right to appeal the denial of his Motion to Suppress.

## 3.  Argument.

The Fourth Amendment provides, in relevant part, that "the right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause... ." *U.S. Const. amend. IV*. The Fourth Amendment expressly limits the Federal Government from conducting searches and seizures, and equally limits State Governments from doing the same via the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 650 (1961).

The Fourth Amendment's prohibition of "unreasonable searches and seizures extends to seizures of the person" or a "vehicle." *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir. 1992).

Searches and seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment except for a few specifically established and well-delineated exceptions." *United States v. Brown*, 996 F.3d 998, 1004 (9th Cir. 2021) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).

One of the "specifically established and well-delineated exceptions" to the Fourth Amendment's probable cause requirement is a "*Terry*" stop, which involves a brief investigative detention as approved in *Terry v. Ohio*, 392 U.S. 1 (1968). A *Terry* stop is a brief investigatory stop that requires, at a minimum, law enforcement to identify the "particular person" suspected of criminal activity *before* the stop. Although the Fourth Amendment does not prohibit all contact

14

between law enforcement and citizens, it prohibits "arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."' *INS v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976).

A hunch, even if it is correct, is not a constitutional basis to conduct a *Terry* stop. A hunch is not particularized suspicion. Although particularized suspicion may not be a high threshold to reach it requires more than a mere hunch. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

It is axiomatic that before Trooper Larson stopped the blue Chrysler 300 the Fourth Amendment required him to know the "***particular person***" he was stopping. The Fourth Amendment requires a "particularized and objective basis for suspecting the ***particular person*** stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Trooper Larson cannot identify the driver of the blue Chrysler 300 *after* stopping the vehicle. *Id.* There is no doubt that at a baseline constitutional threshold, to lawfully conduct a *Terry* stop, Trooper Larson must have had "reasonable suspicion--that is, a particularized and objective basis for suspecting the ***particular person*** stopped of breaking the law." *United States v. Brown,* 996 F.3d 998, 1005 (9th Cir. 2021) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)) (internal quotations omitted, emphasis added).

The Fourth Amendment demands that law enforcement's decision to

conduct a *Terry* stop be "'justified at its inception, and...reasonably related in scope to the circumstances which justified the interference in the first place.'" *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 185 (2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

Even though particularized suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Particularized suspicion requires law enforcement to be "aware of specific, articulable facts which, when considered with objective and reasonable inferences, form the basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). Whether particularized suspicion "exists depends upon the totality of the circumstances surrounding the stop, including 'both the content of information possessed by police and its degree of reliability.'" *United States v. Williams*, 846 F.3d 303, 308 (9th Cir. 2016) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

The District Court relied, in part, on this Court's decision in *United States v. Nault*, 41 F.4th 1073 (9th Cir. 2022). In *Nault*, the police officer conducted an investigatory stop on a vehicle because the vehicle's registered owner had an outstanding warrant. *Id.* at 1079. Here, the vehicle was not registered to Green and

16

the registered owner of the blue Chrysler 300 *did not* have a warrant. *Nault* is not instructive here. And if it were, Judge Tashima's dissent explains the difference between a "traffic stop" and an "investigatory stop" under *Terry* and such explanation requires reversal here. *Id.* at 1082-84.

Trooper Larson's stop here is the one predicted by Judge Kozinski's concurrence in *United States v. Ramirez*, 473 F.3d 1026, 1038 (9th Cir. 2007);

> [T]he case would, of course, be quite different if an officer who had no probable cause or reasonable suspicion were to conduct (or direct another officer to conduct) a traffic stop in the hope of finding something illegal or delaying the suspect. That kind of pretextual traffic stop is clearly prohibited by the Fourth Amendment. See *United States v. Wallace*, 213 F.3d 1216, 1220-21 (9th Cir. 2000).

Trooper Larson had *no* probable cause or particularized suspicion to conduct a traffic stop. He conducted the stop "in the hope of finding" Green. *Id.* There were no moving violations. Not a single traffic violation. Instead, he pulled over the blue Chrysler 300 on the "suspicion" the driver was "gonna be" Green. He was told by Agent O'Dell to pull the vehicle over by developing his own reasonable suspicion. Because he couldn't find a minor traffic violation to base his stop on, he relied on Green's warrant and a report that his license was suspended. But both of those reasons required the actual identification of Green as the driver *before* the investigatory stop. He only confirmed Green was the driver *after* the stop. Therefore, Trooper Larson's investigatory stop is clearly prohibited by the Fourth Amendment. *Wallace*, 213 F.3d at 1220-21.

17



Ex. 1 to Green's Brief in Support of Motion to Dismiss.

This photo, and the video of the stop, illustrate that Green's physical characteristics would not have been identifiable through the "heavily tinted" driver's side window. Here, Green asserted that Trooper Larson could not have seen through the "heavily tinted" driver's side window and therefore could not identify him as the driver *before* stopping the vehicle. For this reason, stopping the vehicle, which was not registered to Green, was a hunch at best. The stop was done to confirm Green's identity as the driver. Trooper Larson's testimony that he could see through the "heavily tinted" driver's side window and identify Green's physical characteristics by looking at a photo on his computer is lacking in credibility. Trooper Larson's credibility was severely undermined before the District Court when he testified that he could identify Green, in part, because of his hair--when in fact Green was wearing a stocking cap--a wave cap--which would

have prevented any identification of him by his hair:



Government's Exhibit 5 on Hearing Regarding Green's Motion to Suppress.

Trooper Larson's testimony is not believable when Green proved that he could not have been identified by his hair. If Trooper Larson cannot be believed about Green's hair, he cannot be believed when he claims he could see through a "heavily tinted" driver's side window to identify physical characteristics that matched a photo on a computer screen.

Importantly, Trooper Larson admitted that he was not able to identify Green as the driver until he approached the vehicle and the driver's window was rolled down a little bit. Supp. Tr. Pg. 31 L. 3-6, ER 28. He admitted he was only able to one hundred percent (100%) positively identify Green as the driver only after the traffic stop. Supp. Tr. Pg. 40 L. 18-19, ER 28.

Trooper Larson agreed that it was possible that someone else was driving the blue Chrysler 300, but he believed that based off of the "suspicion" at the time

he felt pretty confident that it was "gonna be" Green. Supp. Tr. Pg. 43 L. 24-25; Pg. 44 L. 1-3, ER 28. Trooper Larson's admission that on a "suspicion" he believed the driver was "gonna be" Green supports Green's contention--that the Fourth Amendment has been violated here.

The Government argued before the District Court that Trooper Larson is not required to make "proof positive identification" of Green prior to stopping the vehicle. Tr. Pg. 73, L. 5-18, ER 28, ER 105. For the Government, the standard is only that "the driver was likely Green." ER 28, ER 105. The standard the Government advanced before the District Court and the Standard the District Court adopted is extremely dangerous, and could justify any and all investigatory stops without satisfying *Terry's* "particular person" requirement. Ultimately, the Government and the District Court are confusing the lower threshold to conduct an investigatory stop and the absolute necessity that the person being stopped be fully identified and known *before* the stop begins. There are no cases approving an investigatory stop where the suspect is identified *after* the stop like what Trooper Larson did here. Trooper Larson had a hunch and nothing more.

Although Agent O'Dell had previously observed Green driving the vehicle, neither he nor Trooper Larson had any direct knowledge on February 7, 2023 that Green was actively driving the blue Chrysler 300 that day. Only Agent O'Dell had previously observed Green. Trooper Larson had never met Green and was not part

20

of the task force investigating Green. He was just the Trooper on patrol on February 7, 2023, instructed by O'Dell to develop his own independent basis to stop the vehicle. He did not know Green. All he had was a photo on his computer screen in his patrol car. He did not know the color of his eyes, his shape, or anything else that cannot be identified from a two-dimensional (2D) picture on a computer screen. Its strains credulity that Trooper Larson could identify "physical characteristics" based on a photo. That's why his claim to identify Green by his hair when he was wearing a stocking cap--a wave cap must be considered to undermine his credibility.

Worse yet the District Court never reconciled this part of the evidence. The District Court cannot just say Trooper Larson is "credible," but never reconcile the actual incredible portions of his testimony. This is the essence of clear error regardless of any "deference" that may be given to credibility determinations. The District Court here didn't make any credibility determinations because it never reconciled the incredible portions of Trooper Larson's testimony with his claim that he could see through a "heavily tinted" window to identify Green's physical characteristics. In fact, the District Court recognized that all Trooper Larson had was a hunch when it reasoned that "he was confident he would find Green in the driver's seat when he initiated the traffic stop." DKT 60, ER 18 at Pg. 9.

Although this Court has approved the "collective knowledge" doctrine in

*United States v. Ramirez,* 473 F.3d 1026 (9th Cir. 2007), here Trooper O'Dell did not know that Green was driving the blue Chrysler 300 on February 7, 2023. He specifically told Trooper Larson to develop his own basis to stop the vehicle. The "collective knowledge" doctrine does not justify the stop here.

Trooper Larson observed no moving violations. There were no violations to stop the blue Chrysler 300. The vehicle was driving at the speed limit. It was in the correct lane, driving legally. The only thing Trooper Larson had was that the suspected, but not confirmed driver, had an arrest warrant out for him and had a suspended driver's license.

To stop the vehicle, Trooper Larson first had to confirm Green was driving the blue Chrysler 300. The law is clear. No matter how low the threshold is for particularized suspicion, it cannot be a hunch. *char*, 534 U.S. at 273. At its Constitutional minimum, a *Terry* investigatory stop requires first the identification of a "particular person." *Cortez*, 449 U.S. at 417-18; *Brown*, 996 F.3d at 1005. The background of *Terry* should not be lost on this Court. The threshold established for an investigatory stop was imposed because officers were first required to identify a particular person of criminal activity and were prevented from using loitering and vagrancy laws that were later declared to be unconstitutional. See *William J. Stuntz,* The Collapsing American Criminal Justice (2011), pg. 369, n. 16; *See also Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). Even though *Terry*

allows the justification for a stop based on less than probable cause, the true goal of *Terry* was to impose a demanding standard, not to create **no** standard at all. *Id.* Trooper Larson cannot, no matter how much collective knowledge he may have had regarding Green's alleged drug activity, conduct an investigatory stop hoping based on his "suspicion" it was "gonna be" him. That kind of stop is a stop to identify Green. And that violates the Fourth Amendment based on *Terry* itself.

Based on Trooper Larson's admissions he never identified Green as the "particular person" who was driving the blue Chrysler 300 until *after* the stop, the stop was illegal. Therefore, the search here is illegal.

All evidence resulting from Trooper Larson's unconstitutional investigatory stop of the vehicle must be suppressed as fruit of the poisonous tree. "Evidence seized in violation of the Fourth Amendment, including any 'fruit of the poisonous tree,' may not be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Cervantes*, 678 F.3d 798, 807 (9th Cir. 2012) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487 (1963)). Additionally, the evidence seized from Trooper Larson's unlawful investigatory stop was then used as the basis for a number of search warrants to obtain additional evidence against Green. ER 112-13; Ex. 1-5 of United States' Response to Defendant's Motion to Suppress. All of that evidence must also be suppressed as predicated by and derivative of Trooper Larson's unconstitutional investigatory stop. *Id.*

## IX.   CONCLUSION

A hunch is not enough. Trooper Larson did not identify Green as the driver of the blue Chrysler 300 *before* he stopped the vehicle. Although he claimed the driver matched Green's physical characteristics, he was only able to one-hundred percent (100%) identify Green as the driver *after* he removed him from the vehicle. It should not matter that Trooper Larson's hunch was correct. The law is not forgiving on this issue. Trooper Larson either knew it was Green when he stopped the vehicle, or he didn't. His admission that based on his "suspicion" it was "gonna be" Green proves that he did not satisfy *Terry's* demanding standard that an officer must first identify a "particular person" *before* initiating an investigatory stop. Green's Motion to Suppress should have been granted.

RESPECTFULLY SUBMITTED April 7, 2025.

<div style="margin-left: 2em;">

/s/ Jason T. Holden
Jason T. Holden
FAURE HOLDEN HENKEL TERRAZAS, P.C.
Counsel for Appellant Keith Andre Green

</div>

24

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Ninth Circuit Rule 32 that the Opening Brief of Defendant-Appellant contains double spaced line spacing, with exception of quotations and footnotes. The body of the argument has a Times New Roman typeface, proportionately spaced, 14-point size and contains less than 14,000 words at an average of 280 words (or less) per page, including footnotes and quotations. (Total number of words: 5,293 excluding tables and certificates).

Dated April 7, 2025.

/s/ Jason T. Holden
Jason T. Holden
FAURE HOLDEN HENKEL TERRAZAS, P.C.
Counsel for Appellant Keith Andre Green

## STATEMENT OF RELATED CASES

The undersigned, Counsel of record for the Defendant-Appellant in this appeal, pursuant to Rule 28-2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, states that there are no related cases by this Court.

Dated April 7, 2025.

/s/ Jason T. Holden
Jason T. Holden
FAURE HOLDEN HENKEL TERRAZAS, P.C.
Counsel for Appellant Keith Andre Green

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

The following participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF System:

Jennifer Clark (jennifer.clark2@usdoj.gov)
Tim Tatarka (tim.tatarka@usdoj.gov)
Assistant U.S. Attorneys
Counsel for the United States of America

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participants:

Keith Andre Green, No. 98324-510
FCI Lompoc Federal Correctional Institution
3600 Guard Road
Lompoc CA 93436

/s/ Jason T. Holden
Jason T. Holden
FAURE HOLDEN HENKEL TERRAZAS, P.C.
Counsel for Appellant

## CERTIFICATE

I, Jason T. Holden, certify that this brief is identical to the version submitted electronically on April 7, 2025, pursuant to Rule 6(c) of the Administrative Order Regarding Electronic Filing in All Ninth Circuit Cases.

DATED this ____ day of _____, 2025.